[Civ. No. 10910.   Second Appellate District, Division One.—November 27, 1936.]

## CORA IRENE SUND, Appellant, v. CAPTON MICHAEL PAUL, etc., Respondent.

Vincent A. Marco and Courtney & Courtney for Appellant.

W. I. Gilbert for Respondent.

YORK, Acting P. J.—This appeal arises out of two cases, one for conversion of personal property and the other for breach of promise of marriage, both of which were consolidated in the trial court and tried together before a jury.   At the close of the evidence, the court instructed the jury in each case to return a verdict for the defendant.   This action of the trial court is denominated as error by appellant.   Respondent contends that the only question involved in this appeal is whether there is such a conflict in the evidence that the matter of the alleged conversion of the personal property and the alleged breach of contract to marry on the part of respondent should have gone to the jury; and

claims that in the absence of such conflict, the action of the trial court in directing a verdict in both cases cannot be censured.

The record shows, as far as the pleadings are concerned, that on January 11, 1935, plaintiff filed her complaint for conversion of personal property; defendant answered putting in issue the ownership of the property involved, except one diamond bracelet and one mink coat, and in that connection set up *in haec verba* two bills of sale to these articles executed by plaintiff, and further alleged, as a defense to this cause of action, the unchastity of plaintiff with one Mitchell Dressner on or about April 4, 1933. On January 31, 1935, plaintiff by affidavit denied the genuineness of the bills of sale, alleging execution thereof by means of fraud, duress, and threats of injury to her character.

On the same date on which said complaint for conversion was filed, plaintiff filed her action for breach of promise of marriage, to which defendant filed his answer, alleging unchastity of plaintiff; that plaintiff voluntarily ended the engagement by an instrument in writing, attached to answer as an exhibit; that she also executed a complete release of all claims which she might have had against defendant, also attached as an exhibit; and further alleged that plaintiff sought to reassume her contractual relations with defendant, as evidenced by telegrams and letters which were attached to the answer. Plaintiff by affidavit filed January 31, 1935, denied the genuineness and due execution of the instruments attached to the answer, alleging they were obtained from her by means of fraud, duress and unlawful detention of her person.

The evidence shows that the parties to this action met in the summer of 1931 and became engaged to be married in 1933; that plaintiff had in her possession certain articles of jewelry and a mink coat which she claims were gifts to her from the defendant. With the exception of a diamond bracelet and the mink coat, defendant claims that these pieces of jewelry were loaned by him to plaintiff while she was working for him in an antique shop which he operated in New York City, and that as to the bracelet and the mink coat, plaintiff executed bills of sale for these, when defendant's sister bought them from her for the sum of $400, which instruments are part of the record. In April, 1933,

defendant while in New York City suggested to plaintiff that she fly to New York from Los Angeles. She shipped the jewelry to herself there in care of defendant's sister and arrived in New York in the afternoon of April 2, 1933, but did not see defendant at any time during her stay, although she did communicate with him by telephone.

Plaintiff testified that at 2 A. M. of April 4, 1933, after spending the evening in a cafe operated by defendant's brother, she returned to her apartment accompanied by one Mitchell Dressner; that shortly after their arrival at her apartment, defendant's brother and sister, accompanied by two men unknown to plaintiff entered the apartment; that one of the men took her by the arm, placed her in a chair at a writing desk, pulled out a piece of paper, put pen and ink in her hand, and stood behind her with his hand on her shoulder; that this man and his companion said they were detectives and showed her their badges, and ''they told me they would take me to the women's prison there for having a man in my room, that . . . I just wouldn't have a chance under New York laws''. During this time, Mr. Dressner was in the bedroom of the apartment using the telephone, and that at the dictation of defendant's sister, plaintiff wrote the following note: ''Dear Paul: For reasons best known to myself I hereby declare our engagement broken off. Cora Sund.''

The next day she accompanied defendant's sister to the Chase National Bank in New York, at which time the sister was in possession of the box of jewelry and, at her request, plaintiff signed two bills of sale, one for the diamond bracelet and one for the mink coat, for a consideration of $400, and turned the fur coat over to defendant's sister. She also at that time executed a general release in favor of defendant. Plaintiff testified that she signed all three documents without being allowed to read them; that defendant's sister held them ''all folded up, one line on each showing, the dotted line''. Within a short time thereafter, plaintiff returned to her home in Minnesota.

It was shown on behalf of defendant that when the witnesses, above referred to, gained entrance to plaintiff's apartment on April 4th, they found plaintiff and Mitchell Dressner in a compromising situation; that plaintiff voluntarily wrote and signed the note to defendant, hereinbefore set out. The

defendant's sister testified that plaintiff voluntarily executed the bills of sale and the release at the Chase National Bank on April 6, 1933. There was introduced in evidence many letters and telegrams of plaintiff in which she sought the forgiveness of defendant for the wrong she had done him.

The only conflicting evidence in the record is in regard to what took place at plaintiff's apartment on April 4th. Although the cases do not appear to be in agreement as to what principles should govern the trial court on a motion for a directed verdict, it was held in the *Estate of Flood*, 217 Cal. 763, 768 [21 Pac. (2d) 579] : "It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted 'only when, *disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence,* the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given'."

We believe that upon the authority of the cited case the court was justified in instructing the jury in each case to return a verdict for the defendant.

The judgments appealed from are affirmed. The orders denying motions for judgments notwithstanding the verdicts are, and each of them is, affirmed.

Doran, J., and Desmond, J., *pro tem.*, concurred.